**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**



THEODORE SULLIVAN,

      Plaintiff,

v.                          Civil Action No. 3:15CV10

R.W. YOUNCE, <u>et al.</u>,

      Defendants.

**MEMORANDUM OPINION**

Theodore Sullivan, a Virginia inmate proceeding <u>pro</u> <u>se</u> and

<u>in</u> <u>forma</u> <u>pauperis</u>, filed this 42 U.S.C. § 1983 action.[1]   The

matter proceeds on the Particularized Complaint ("Complaint,"

ECF No. 30) alleging that Defendants[2] violated his First[3] and

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute
> . . . of any State . . . subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable
> to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] R.W. Younce is the former Warden of the Greensville
Correctional Center ("GCC").   (Compl. ¶ 1.)   Eddie Pearson is
the former Lead Warden of GCC.   (<u>Id.</u> ¶ 2.)   Wendy S. Hobbs was
the Eastern Regional Administrator.   (<u>Id.</u> ¶ 3.)   Lt.
Investigator Harrison was an institutional investigator at GCC
who has since retired.   (Mem. Supp. First Mot. Dismiss 1 n.1 &
2, ECF No. 36.)   Sgt. Medilia was a correctional officer at GCC.
(<u>Id.</u> at 2.)   The Court corrects the spelling of the Defendants'
names to what is reflected in the Motion to Dismiss.

Fourteenth[4] Amendment rights and his rights under the Religious Land Use and Institutional Persons Act ("RLUIPA").[5] The matter is before the Court on the Motion to Dismiss filed by Defendants R.W. Younce, Sgt. Medilia, and Wendy S. Hobbs ("First Motion to Dismiss," ECF No. 35), and a separate Motion to Dismiss filed by Defendant Lt. Investigator Harrison ("Second Motion to Dismiss," ECF No. 47),[6] and the Court's obligations under 28 U.S.C. § 1915A. Sullivan has responded. (ECF Nos. 45, 50.)[7] For the reasons set for below, the Court will grant the Motions to

---

[3] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[4] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[5] 2 U.S.C. § 2000cc-1(a).

[6] Both Motions to Dismiss are substantially similar, thus, the Court addresses both simultaneously in this Memorandum Opinion.

[7] In his two Replies to the Motions to Dismiss, Sullivan attempts to allege new facts and provide evidence to correct the deficiencies in his Complaint identified by Defendants. Sullivan may not do so. "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) (internal citations omitted) (internal quotation marks omitted). Nevertheless, the Court's review of the new facts alleged in the Replies fails to alter the conclusion that Sullivan fails to state a claim upon which relief can be granted. Thus, the Court considers the new facts alleged in the Replies.

Dismiss.   Sullivan's claims will be dismissed for failure to state a claim for relief and as frivolous.

## I.   STANDARD OF REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted."   28 U.S.C. § 1915(e)(2); see 28 U.S.C. § 1915A.   The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'"   Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."   Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the

plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl.

4

Corp., 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS AND CLAIMS

In December 2013, Sullivan was housed in the GCC. On December 26, 2013, Defendant Medilia searched Sullivan's cell, confiscated Sullivan's "religious literature," and gave it to Defendant Harrison. (Compl. ¶ 6.) The purpose of removing the items was to determine whether the items were gang-related "Five Percent[er]" materials. (See id. ¶¶ 8-9, 60.)

Sullivan filed an informal complaint requesting the return of his property. (Compl. ¶ 8; id. Ex. 1, at 1.) Sullivan's unit manager informed him that his property was turned over to the investigator and that it was under review, and if there was anything that was not considered contraband, it would be returned to him at the conclusion of the investigation. (Compl. ¶ 9; id. Ex. 1.) Sullivan then submitted a regular grievance indicating that his religious materials were taken and he wanted them returned to him. (Compl. ¶ 10; id. Ex. 2.) Assistant Warden Carolyn Parker found Sullivan's grievance unfounded for the same reasons as his unit manager. (Compl. ¶ 11; id. Ex. 4.) Sullivan appealed that decision, and Defendant Hobbs upheld the decision of Parker. (Compl. ¶ 12; id. Ex. 5.)

On January 31, 2014, Sullivan was transferred from GCC to Keen Mountain Correctional Center ("KMCC") at the request of the Eastern Region Administrator. (Compl. ¶ 15; id. Ex. 6, at 1.) Sullivan filed several informal requests and one informal complaint complaining about his transfer. (See id. Ex. 6, at 1-3.) In his informal requests, he complained that his security level was too low for him to be transferred to KMCC. (See id. at 2-3.) Staff responded to Sullivan, explaining that he was incorrect, stating: "you were assigned to KMCC by Cent[ral] Classification Services. You are [Security Level] 3. KMCC houses [Security Level] 3 and 4 offenders." (Id. at 3.)

6

Sullivan filed an informal complaint on March 7, 2014, that was sent to the GCC grievance office, complaining that his "transfer to K.M.C.C. was retaliation for the complaints and grievances I wrote . . . ." (Id. at 1.)   K. Whitehead responded and explained the following:

> You were transferred to Keen Mountain on 1-31-14 at the request of Eastern Region Administrator.  While at Greensville only one regular grievance was receipted from you on 1-30-14 concerning confiscation of religious property which was one day before your transfer[;] therefore[,] it is highly unlikely your transfer was retaliatory to grievance writing.

(Id.)   Sullivan continued to file informal complaints and grievances regarding his transfer and the confiscation of his property throughout 2014.   (Compl. ¶¶ 16-37.)   Sullivan's confiscated property has not been returned to him.   (Compl. ¶ 50.)

Sullivan lists his claims as follows:[8]

Claim One:   "Defendants Younce, Harrison, and Sgt. Medilia, violated his First Amendment Right – Free Exercise clause – to be allowed to have his religious materials by the Nation of Islam . . . to meet his religious needs." (Compl. 13.)

Claim Two:   "Defendants Younce, Harrison, and Sgt, Medilia violated his rights under the Religious Land Use and Institutionalized Person Act . . . to be allowed his religious materials to meet his religious needs."  (Id.)

---

[8] The Court corrects the spelling and capitalization in quotations from Sullivan's Complaint.

Claim Three:     "Defendants Younce, Pearson, Harrison, and Sgt. Medilia violated his Fourteenth Amendment Right – to Equal Protection . . . ." (Id.)

Claim Four:      "Defendants Younce, Pearson, and Hobbs, violated his Fourteenth Amendment Rights – to the Due Process Clause by transferring Plaintiff over eight (8) hours away from his home and family as a means of retaliation for filing his numerous requests, letters, complaints, and grievances due to the unlawful taking of his religious material." (Id.)

While Sullivan did not list a fifth claim, Defendants have generously construed Sullivan to raise the additional claim in the body of his Complaint:

Claim Five:      Defendants Younce, Pearson, and Hobbs violated Sullivan's due process rights by taking his property from his cell.

Sullivan demands monetary damages and injunctive relief. (Id. at 33-34.)[9]

---

[9] Sullivan brings this action against Defendants in their individual and official capacities. RLUIPA fails to authorize a private cause of action for money damages against state officials in their official or personal capacities. Sossamon v. Texas, 563 U.S. 277, 293 (2011) (holding that state officials sued in their official capacities enjoy Eleventh Amendment Immunity against RLUIPA claims for damages); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009) (concluding that, as an exercise of Congress's spending clause authority, RLUIPA failed to authorize claims for monetary damages against state officials in their individual capacities); see Haight v. Thompson, 763 F.3d 554, 569-70 (7th Cir. 2014) (concluding that, as an exercise of Congress's authority under the Commerce Clause, RLUIPA failed to authorize claims for monetary damages against state officials in their individual capacities). Accordingly, Sullivan's demands for monetary damages with respect to RLUIPA will be dismissed. Thus, with respect to Claim Two, only Sullivan's demand for injunctive relief remains.

## III.   ANALYSIS

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   While courts should liberally construe pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).   The Court need not attempt "to discern the unexpressed intent of the plaintiff." Laber v. Harvey, 438 F.3d 404, 413 n.3 (4th Cir. 2006).   The Fourth Circuit has explained that "though [pro se] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." Beaudett, 775 F.2d at 1276.   In other words, "[d]istrict judges are not mind readers." Id. at 1278.

As a preliminary matter, Sullivan's claims as set forth above do not correspond with the facts that Sullivan has delineated to support each claim.   For example, in Claim Four, Sullivan alleges a due process violation because Defendants Younce, Pearson, and Hobbs transferred him as retaliation for filing grievances.   The body of his Complaint that purportedly

corresponds to Claim Four, however, alleges that his due process rights were violated when his property was taken. (Compl. ¶¶ 71-72.) Sullivan later adds an entire section titled, "**Retaliation**" (id. at 25), although he alleged no freestanding claim of retaliation. Liberal construction of a pro se pleading does not mean that a court should invent facts to remedy an inadequately pled claim. Instead, the "plaintiff remains the master of his complaint and is, in the end, the person responsible for articulating the facts that give rise to a cognizable claim." Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998). Sullivan has had more than ample opportunity to plead his claims. Accordingly, the Court will not cull through the allegations and supporting facts to create legal claims for Sullivan.

### A.    No Personal Involvement Alleged

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)(citations omitted). "[A] plaintiff must plead

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974) (citing U.S. ex rel. Brzozowski v. Randall, 281 F. Supp. 306, 312 (E.D. Pa. 1968)). As discussed below, Sullivan fails to allege any personal involvement in the deprivation of his rights by the majority of the Defendants.

## B.    First Amendment (Claim One)

In Claim One, Sullivan alleges that "Defendants Younce, Harrison, and Sgt. Medilia, violated his First Amendment Right - Free Exercise clause - to be allowed to have his religious materials by the Nation of Islam . . . to meet his religious needs." (Compl. 13.)

As an initial matter, Defendants argue that Sullivan alleges no personal involvement in the deprivation of his constitutional rights by Defendant Younce. Sullivan fails to mention Defendant Younce in the body of his Complaint, much less allege personal involvement in the deprivation of his religious rights. For the first time in his Reply, and in an attempt to

11

correct the deficiencies identified by Defendants' in their Motion to Dismiss with regard to Claim One, Sullivan adds new allegations that amend paragraph 48 of his Complaint. In his Complaint, Sullivan alleged that, while Sgt. Medilia was searching Sullivan's cell, he received a call on his radio asking "Did you find anything yet?" (Compl. ¶ 48.) In his Reply, Sullivan now contends that Sgt. Medilia received the call from Defendant Younce and that Defendant Younce was in "direct line of sight of [Sullivan] when he stated this," thereby, Defendant Younce had personal involvement in the search. (Reply 5, ECF No. 45.) As discussed previously, a reply in response to a motion to dismiss is not the proper place to allege new facts to correct the deficiencies in a complaint. Nevertheless, because Sullivan's First Amendment claim clearly lacks merit, the Court addresses any claim against Defendant Younce in conjunction with its discussion of Defendants Harrison and Medilia.

To state a First Amendment free exercise claim, Sullivan must allege facts that suggest that "(1) he holds a sincere belief that is religious in nature" and (2) that Defendants Harrison and Medilia imposed a substantial burden on the practice of his religion. Whitehouse v. Johnson, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing Hernandez v. Comm'r, 490 U.S. 680, 699 (1989)).

"Government officials impose a substantial burden on the free exercise of religion by 'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Massenburg v. Adams, No. 3:08cv106, 2011 WL 1740150, at *4 (E.D. Va. May 5, 2011) (alteration in original) (some internal quotation marks omitted) (quoting Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006)).

Sullivan "declares that he practices Islam under the prescribed laws of his prophet The Honorable Elijah Muhammad, and he also declares that the religious materials that [were] confiscated [were] the exact same religious materials that the members of Nation of Islam study . . . ." (Compl. ¶ 42.) Sullivan indicates that "[h]e is a true and devout Believer in the teachings of Master Fard Muhammad, and the Most Honorable Elijah Muhammad . . . ." (Id. ¶ 54.) Thus, the Court assumes without deciding that Sullivan's religious beliefs are sincere.

Defendants argue that Sullivan fails to allege facts that plausibly suggest that either Defendant Harrison or Defendant Medilia intentionally deprived Sullivan of his ability to practice his religion. "[O]nly intentional conduct is actionable under the Free Exercise Clause." Lovelace, 472 F.3d at 201. Thus, "[n]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." Id. (citations omitted). Sullivan contends that

13

Defendant Medilia took religious materials and his black history books from Sullivan's cell because they were suspected Five Percenter gang-related materials that are forbidden in the GCC. (Compl. ¶¶ 43, 48.)[10] Sullivan suggests that Defendant Harrison took the confiscated property immediately from Defendant Medilia to determine whether the property was prohibited. (Id. ¶ 49.) Here, Sullivan fails to assert that Defendants Harrison or Medilia "conscious[ly] or intentional[ly] interfere[d] with his free exercise rights." Lovelace, 472 F.3d at 201. To the contrary, the record shows that Defendants Harrison and Medilia took a variety of books and materials from Sullivan's cell, not just religious materials. Both Defendants took the materials because they were suspected gang-related materials. Sullivan fails to allege anything more than "a negligent interference with free exercise rights," a claim "not actionable under § 1983." Id.[11] Thus, Claim One can be dismissed on this basis alone.

Even if Sullivan had alleged that the confiscation of his religious property was an intentional act, the Court finds this claim fails to state a claim for relief. Sullivan fails to

---

[10] Sullivan himself labels these confiscated materials as "my five percenter/[Nation of Islam] material." (Compl. Ex. 1.)

[11] The Court finds that a similar conclusion applies to Defendant Younce if he directed Defendant Medilia to search Sullivan's cell.

allege that Defendants Harrison, Medilia, and Younce imposed a substantial burden on his ability to practice his religion. Sullivan has not alleged that Defendant Harrison's, Medilia's, and Younce's actions have put "substantial pressure" on him to "modify his behavior and to violate his beliefs." Lovelace, 472 F.3d at 187. Sullivan alleges at most, "Plaintiff declares that being deprived of these religious materials of the Nation of Islam and his religious books, he could not practice his religion generally. This placed a 'substantial burden' and placed pressure on the plaintiff to modify his behavior, which violates his beliefs." (Compl. ¶ 52.) Sullivan states nothing more than the legal standard for a First Amendment claim with no facts supporting his claim that his religion was substantially burdened by Defendants Harrison, Medilia, or Younce. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is insufficient to plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Sullivan's vague allegations fail to plausibly suggest that Defendants Younce, Harrison, and Medilia substantially burdened his religious rights. See Krieger v. Brown, 496 F. App'x 322, 325-26 (4th Cir. 2012); see also Shabazz v. Va. Dep't of Corr., No. 3:10CV638, 2013 WL 1098102, at *6-9 (E.D. Va. Mar. 15, 2013).

Moreover, Sullivan does not allege that he is prohibited from engaging in the tenets of his religion including meeting for religious study, praying, viewing sermons, eating a religious diet, or receiving new religious reading materials. See Whitehouse, 2011 WL 5843622, at *4 (holding that where inmate may still engage in religious practices but "not through his preferred vendor" and where inmate possesses the ability to handwrite religious coursework instead of his preferred method of typing, inmate failed to allege a substantial burden on his religion); cf. Coleman v. Governor of Mich., 413 F. App'x 866, 875-76 (6th Cir. 2011) (concluding that policies limiting access to religious radio and television failed to substantially burden religious exercise because inmates "may receive religious literature via the mail and may receive visitors at the prison to discuss their religious beliefs"); Smith v. U.S. Congress, No. 3:12CV45, 2015 WL 1011545, at *14-15 (E.D. Va. Mar. 6, 2015) (concluding that prison's single vendor policy failed to substantially burden his religious exercise by denying him access to new religious sermons when other methods were available to engage in that practice). Because Sullivan fails to allege facts that show that Defendants Younce, Medilia, and Harrison substantially burdened his practice, Sullivan states no First Amendment claim. Claim One will be dismissed.

## C.   RLUIPA (Claim Two)

In Claim Two, Sullivan contends that "Defendants Younce, Harrison, and Sgt, Medilia violated his rights under the Religious Land use and Institutionalized Person Act . . . to be allowed his religious materials to meet his religious needs." (Id.)  Sullivan argues that "defendants confiscated his religious materials and books [in violation of RLUIPA] . . . , leaving him without any religious materials for more than 2 years and 4 months, and as of this day he has still not received them back."  (Compl. ¶ 84.)  In support of his claim for injunctive relief, Sullivan also states that "there needs to be some type of criteria set out to distinguish the lessons of the NOI from gang paraphernalia." (Compl. ¶ 93.)

In the Motion to Dismiss, Defendants argue that Sullivan fails to state a RLUIPA claim because:  (1) he fails to allege any personal involvement of the three Defendants; and in the alternative, (2) he fails to allege facts suggesting that Defendants Younce, Medilia, or Harrison intentionally burdened his religious exercise; and (3) he fails to allege facts that plausibly suggest that the named Defendants have any involvement in "enacting the policy Sullivan is presumptively challenging-specifically, VDOC's zero tolerance policy with respect to the possession of 'Five Percenter' materials within the inmate

population." (Mem. Supp. First Mot. Dismiss. 15; <u>see</u> Mem. Supp. Second Mot. Dismiss 10.)

Defendants are correct in the first regard. Sullivan fails to mention Defendants Younce, Harrison, or Medilia in the body of his Complaint much less allege personal involvement in the deprivation of his religious rights. At most, under his "R.L.U.P.A." section, Sullivan states that "defendants . . . turn[ed] a blind eye on his confiscated religious materials . . . ." (Compl. ¶ 85.) As Defendants correctly assert, such a vague allegation is insufficient to demonstrate that Younce, Harrison, or Medilia were personally involved in the deprivation of his rights under RLUIPA. Thus, Sullivan has failed to allege facts plausibly indicating that Defendants Younce, Medilia, or Harrison violated his rights under RLUIPA.

For the first time in response to the Motions to Dismiss, Sullivan attempts to correct the deficiencies in his Complaint and alleges that the individual Defendants were involved in the deprivation of his rights. Responding to Defendants' second and third argument, Sullivan states that Defendants "Medilia [,] Younce[, and Harrison] acted intentionally under the guise of the VDOC no tolerance policy to deprive Plaintiff of certain material that is known not to be 5% literature by those who have been trained to recognize 5% literature." (Reply 14, ECF No.

45; Reply 7, ECF No. 50.)    Sullivan also claims that because staff took his property, that included some religious material, this was an "'intentional burden on the free exercise' of Plaintiff's religion." (See, e.g., Reply 7, ECF No. 50.)   The Court need not address Defendants' second and third arguments because Sullivan fails to allege facts indicating that his religious exercise was substantially burdened as is required under RLUIPA.[12]

To the extent that Sullivan argues that Defendants Younce, Medilia, and Harrison applied the VDOC policy against gang materials in violation of RLUIPA, Sullivan fails to state a claim for relief for the reasons stated below.

### 1. Whether the Burdened Activities Are A Religious Exercise

RLUIPA provides, in pertinent part, that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
    (1) is in furtherance of a compelling governmental interest; and

---

[12] First, to the extent that Sullivan argues that the VDOC anti-gang policy violates his rights under RLUIPA, he fails to allege that Defendant Younce, Medilia, or Harrison, as employees of the GCC, had any role in adopting, enacting, or amending the global Virginia Department of Corrections ("VDOC") policy that presumably applies not just to GCC, but to all VDOC facilities. See Lovelace, 472 F.3d at 193 (holding that "there is a claim only against" the individual in his official capacity "who issued the challenged policy as an official of the Commonwealth").

**(2)** is the least restrictive means of furthering
that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, to begin, Sullivan must allege
facts plausibly suggesting that Defendants' policies impose a
"substantial burden" on his religious exercise. In determining
if Sullivan has met this standard, the Court must answer two
questions: "(1) Is the burdened activity 'religious exercise,'
and if so (2) is the burden 'substantial'?" Adkins v. Kaspar,
393 F.3d 559, 567 (5th Cir. 2004); see Couch v. Jabe, 679 F.3d
197, 200-01 (4th Cir. 2012) (employing similar two-part
inquiry).

"RLUIPA defines the term 'religious exercise' broadly to
include 'any exercise of religion, whether or not compelled by,
or central to, a system of religious belief.'" Couch, 679 F.3d
at 200 (quoting 42 U.S.C. § 2000cc-5(7)(A)). Sullivan's claim
implicates one activity—his ability to possess religious reading
materials. (Compl. ¶¶ 83-84.) Given RLUIPA's broad definition
of religious exercise, the Court assumes this activity
constitutes religious exercise. See Whitehouse, 2011 WL
5843622, at *3 (assuming inmate's enrollment in seminary course
constituted religious exercise for purposes of RLUIPA).

## 2. Sullivan Fails To Demonstrate A Substantial Burden On His Religious Exercise

RLUIPA fails to define the term substantial burden. See
Couch, 679 F.3d at 200. The United States Court of Appeals for

the Fourth Circuit determined that the Supreme Court's jurisprudence interpreting the Free Exercise Clause provides guidance on the issue. See Lovelace, 472 F.3d at 187.  Thus, the Fourth Circuit has explained that a substantial burden

> is one that put[s] substantial pressure on an adherent
> to modify his behavior and to violate his beliefs, or
> one that forces a person to choose between following
> the   precepts   of   h[is]   religion   and   forfeiting
> [governmental]   benefits,   on   the   one   hand,   and
> abandoning one of the precepts of h[is] religion . . .
> on the other hand.

Couch, 679 F.3d at 200 (alterations and omission in original) (quoting Lovelace, 472 F.3d at 187).   In conducting the substantial burden inquiry, the plaintiff "is not required . . . to [allege facts indicating] that the exercise at issue is required by or essential to his [or her] religion." Krieger v. Brown, 496 F. App'x 322, 325 (4th Cir. 2012) (citing Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005)).   Nevertheless, "at a minimum the substantial burden test requires that a RLUIPA plaintiff [allege facts indicating] that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004));[13]

---

[13]   In Sossamon v. Texas, 563 U.S. 277, 293 (2011), the Supreme Court abrogated Smith's ultimate holding that RLUIPA allows for monetary damages against state officials acting in their official capacity.

cf. Krieger, 496 F. App'x at 326 (affirming grant of summary judgment where inmate failed to "show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs" (citing Lovelace, 472 F.3d at 187)). Thus, no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007).

Two recent cases from the Fourth Circuit illustrate a plaintiff's responsibility with respect to alleging facts that plausibly suggest a substantial burden. In Couch, the plaintiff "testified that the primary religious texts of Islam command that he grow a beard and that the refusal to maintain a beard is a sin comparable in severity to eating pork." Couch, 679 F.3d at 200. The VDOC's grooming policy prohibited inmates from growing beards and enforced this rule by placing a noncompliant inmate in a program that "restricted or limited [the inmate's] access to personal property, movement rights, the right to eat and associate with others, recreation time, and visitation time." Id. at 199. The Fourth Circuit concluded that VDOC's grooming policy and enforcement mechanism "fit squarely within the accepted definition of 'substantial burden'" because it

placed substantial pressure on the plaintiff to modify his
behavior and violate his beliefs.    Id. at 200-01 (citing
Warsoldier v. Woodford, 418 F.3d 989, 995-96 (9th Cir. 2005)).

        In Krieger, the Fourth Circuit declined to find that an
inmate had demonstrated a substantial burden where prison
officials denied "his requests for an 'outdoor worship circle'
and certain 'sacred items' related to his religious practice of
Asatru." Krieger, 496 F. App'x at 322.    The plaintiff "asserted
that deprivation of the outdoor worship circle would require him
to pray indoors, and that the 'Blot' ceremony is 'best performed
outdoors.'"    Id. at 325 (emphasis added).    The Fourth Circuit
concluded that the mere denial of the optimal manner for
performing the "Blot" ceremony could not demonstrate a
substantial burden where the plaintiff "failed to offer any
explanation regarding the reason why indoor worship would
compromise his religious beliefs."    Id.    Similarly, the inmate
failed to demonstrate a substantial burden with respect to the
denial of additional sacred items simply by the "blanket
assertion" that "the sacred items were 'necessary' to perform
'well-established rituals.'"    Id. at 326.    The Fourth Circuit
noted that plaintiff "did not identify those rituals, or explain
why the absence of the sacred items had an impact on the rituals
and violated his beliefs." Id.

Krieger illuminates another consideration in conducting the substantial burden inquiry.  The availability to an inmate, in the most general sense, of other means to practice his or her faith is not relevant to the RLUIPA substantial burden inquiry. Al-Amin v. Shear, 325 F. App'x 190, 193 (4th Cir. 2009). "Nevertheless, courts properly consider whether the inmate retains other means for engaging in the particular religious activity, such as the "Blot" ceremony, in assessing whether a denial of the inmate's preferred method for engaging that religious exercise imposes a substantial burden."  Shabazz v. Va. Dep't Corr., 3:10CV638, 2013 WL 1098102, at *7 (E.D. Va. Mar. 15, 2013) (citing Krieger, 496 F. App'x at 326; Coleman v. Governor of Mich., 413 F. App'x 866, 875-76 (6th Cir. 2011)). Thus, an inmate failed to demonstrate the denial of additional group study time imposed a substantial burden upon his religious exercise where prison officials already provided three hours of group study and worship time and allowed inmate to study in his cell.   See Van Wyhe v. Reisch, 581 F.3d 639, 656-57 (8th Cir. 2009).  Similarly, the United States Court of Appeals for the Sixth Circuit concluded that prison policies which limited the inmates' access to religious radio and television broadcasts failed to substantially burden the inmates' religious exercise because the inmates "may receive religious literature via the mail and may receive visitors at the prison to discuss their

24

religious beliefs." <u>Coleman</u>, 413 F. App'x at 876. As explained below, in light of the foregoing principles, Sullivan fails to allege facts that plausibly suggest any substantial burden upon his religious exercise.

Sullivan fails to allege facts indicating that Defendants placed a substantial burden on his religious exercise. Sullivan fails to allege facts plausibly suggesting that Defendant Younce's, Harrison's, or Medilia's removal of suspected gang materials, including his religious reading materials, from his cell on one occasion, placed "substantial pressure" on him to violate his religious beliefs or abandon one of the precepts of his religion. <u>Whitehouse</u>, 2011 WL 5843622, at *4 (citing <u>Lovelace</u>, 472 F.3d 187); <u>cf.</u> <u>Living Water Church of God</u>, 258 F. App'x at 739. At most, Sullivan alleges an inconvenience to his religious exercise. <u>See</u> <u>Smith</u>, 502 F.3d at 1278 (explaining that a burden that is merely an "inconvenience on religious exercise" is not substantial); <u>Living Water Church of God</u>, 258 F. App'x at 739 (no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult"). Sullivan claims that the confiscated items were not prohibited by the VDOC policy that forbids gang-related materials. Thus, Sullivan does not allege that he is unable to have access to these religious materials, just that his personal copies were taken from him. Sullivan does not allege, for

example, that he is forbidden to acquire new religious reading materials or books, borrow religious books or materials from another inmate, or read religious materials in the library. See Smith, 2015 WL 1011545, at *14-15. Sullivan fails to allege facts plausibly suggesting that Defendants Younce, Harrison, or Medilia violated his rights under RLUIPA. Cf. Heleva v. Kramer, 330 F. App'x 406, 409 (3d. Cir. 2009) (depriving inmate of possessing literature "designed to uphold and strengthen [inmate's] faith in God" was not a substantial burden because inmate did not have to abandon the precepts of his religion and was not pressured to substantially modify his behavior). Accordingly, to the extent that Sullivan even alleges a RLUIPA claim against Defendants Younce, Harrison, or Medilia, he fails to state a claim upon which relief may be granted. Claim Two will be dismissed.

### D. Equal Protection (Claim Three)

In Claim Three, Sullivan alleges that Defendants Younce, Pearson, Harrison, and Medilia "violated his Fourteenth Amendment Right - to Equal Protection clause - to be provided equal treatment . . . ." (Compl. 13.) In his section alleging facts in support of his equal protection claim, Sullivan vaguely contends that "defendants were notified [of the offending conduct] on behalf of Defendant Harrison who is holding and continues to hold Plaintiff's religious materials" (Compl.

26

¶ 67), and that "Defendants are aware of this unequal treatment." (Id. ¶ 69.) As discussed below, Sullivan's "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct," fails to state a claim against Defendants Younce, Pearson, and Medillia. Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008) (citing Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003)).

### 1. Defendants Younce, Pearson, and Medilia

As a preliminary matter, Sullivan fails to mention Defendant Medilia at all in the portion of his Complaint addressing his equal protection claim. Thus, Sullivan fails to explain how Defendant Medilia was personally involved in the deprivation of his equal protection rights. Sullivan fails to state a claim against Defendant Medilia and Claim Three against Defendant Medilia will be dismissed.

The section of Sullivan's Complaint pertaining to his equal protection claim mentions Defendants Younce and Pearson only with respect to a different claim. Sullivan states: "Defendants are aware of this unequal treatment, and this unequal treatment is intentional discrimination . . . [and] due to his complaints and grievances against the institution of GRCC . . . . this led to the Defendants Younce, Pearson, and Hobbs, transferring plaintiff over eight (8) hours away to a

Maximum Security facility (KMCC) when a transfer wasn't requested nor warranted." (Compl. ¶ 69.) Sullivan's allegations about Defendant Younce's and Pearson's purported involvement do not have any bearing on his equal protection claim, but instead are the subject of Claim Four, a due process claim. Sullivan fails to allege facts indicating that Defendants Younce and Pearson had any personal involvement in the deprivation of his rights under the Equal Protection Clause.

Again, for the first time in his Reply, Sullivan attempts to correct the deficiencies in his Complaint and add new facts about the personal involvement of Defendants Younce and Pearson. Sullivan claims that Defendant Younce "was physically present during the confiscation" (Reply 8, ECF No. 45), which is inconsistent with Sullivan's previous allegations in his Reply that Younce was in a different part of the pod. Sullivan also claims that Defendant Pearson was personally involved in the deprivation of his equal protection rights because he "was notified of the violations via verbal complaints, and letters." (Id.) These belated assertions are not properly considered. To the extent there remains any equal protection claim against Defendant Younce or Pearson, it is entirely frivolous, as explained below.

## 2. Defendant Harrison

Sullivan only names Defendant Harrison in the body of the Complaint as it relates to his equal protection claim. Sullivan contends that "Defendant Harrison . . . is holding and continues to hold Plaintiff's religious materials . . . ." (Compl. ¶ 67.) As evident from Sullivan's Complaint, in response to Sullivan's various grievances, on September 10, 2014, Lt. Harrison was asked about Sullivan's allegations and noted that "he had no idea of what [materials Sullivan was] referring to." (Compl. Ex. 17.)[14] Defendant Harrison is now retired from GCC; thus, Sullivan fails to allege facts that plausibly suggest that Defendant Harrison has continued to hold his religious materials in violation of equal protection.

To the extent that an equal protection claim remains against any Defendant, Sullivan's allegations are convoluted and frivolous. "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Sullivan must allege that:  (1) that he and a comparator inmate were treated differently and were similarly situated; and (2) that the

_____

[14] The same grievance indicates that Sullivan was informed that "this material has not been located in the Intel Dept." (Compl. Ex. 17.)

different treatment was the result of discrimination. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001) (internal quotation marks omitted) (citation omitted). If a plaintiff sufficiently satisfies that requirement, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) (citations omitted). "In a prison context," disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" Veney, 293 F.3d at 732 (alteration in original) (quoting Shaw v. Murphy, 532 U.S. 223, 225 (2001)).

Sullivan alleges that "his religious material is that of Nation of Islam. These lessons are the exact same. The Nation of Islam members are allowed to study the exact same religious materials, he should also be allowed to study the exact same materials without having them confiscated." (Compl. ¶ 68.) Sullivan seemingly argues that he has been treated differently than other members of the Nation of Islam because he is a member of the Nation of Islam. In his Reply, he attempts to clarify this statement, and provides: "[T]he reason that it is

30

intentional discrimination is because Plaintiff does subscribe to the teaching just like other members of the Nation of Islam, but he is not being equally treated as them because they are allowed to keep the same religious material as that which was taken from him." (Reply 5, ECF No. 50.)

Sullivan claims that the application of the policy that prohibits gang-related materials to him violates the Equal Protection Clause. Sullivan fails to allege facts that similarly situated groups of inmates have been treated differently under the policy that prohibits inmates from having gang-related materials, much less that Defendants Younce, Pearson, or Harrison acted with discriminatory purpose.[15] First, while Sullivan claims to be a member of the Nation of Islam, he himself identified the items taken from him as "Five Percenter/N.O.I. Material." (Compl. Ex. 1.) Sullivan fails to allege facts that other inmates who have possessed property that is "Five Percenter/N.O.I. Material" have been treated differently than him. Thus, he fails to make the threshold showing for an Equal Protection challenge and the Court finds his claim frivolous. See In re Long Term Administrative

---

[15] "The Court need not proceed to the succeeding question of whether [Sullivan]'s differential treatment, had it occurred, would have been rational under Turner [v. Safley]" because he fails to allege facts indicating that Defendants had a discriminatory intent. In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 n.5 (4th Cir. 1999) (citations omitted).

*Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471 (4th Cir. 1999) (citation omitted) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence.") Claim Three will be dismissed as frivolous.

### E.  Due Process And Retaliation Claims (Claim Four and Five)

The Court discusses Claims Four and Five together because Sullivan fails to differentiate between the claims.  These two claims are disjointed and rambling and require the Court to scour the record to find the one instance where he mentioned Defendants in relation to this claim.  In Claim Four, Sullivan contends that "Defendants Younce, Pearson, and Hobbs, violated his Fourteenth Amendment Rights - to the Due Process Clause by transferring Plaintiff over eight (8) hours away from his home and family as a means of retaliation for filing his numerous requests, letters, complaints and grievances due to the unlawful taking of his religious material." (Compl. 13.)  The only instance where these three Defendants are named in the body of the Complaint with regard to this claim is the section titled "**Retaliation**," where he alleges that "Younce, Pearson, and Hobbs transferred him to KMCC, to punish him for complaining and grievances concerning misconduct by prison officers." (Compl.

¶ 74.)    Sullivan fails to allege any facts indicating that
Defendants Younce or Pearson had any personal involvement in the
deprivation of his due process rights or retaliated against him
for exercising a constitutionally protected right.[16]

Instead, the record before the Court establishes that
Sullivan was transferred one day after he filed his first
grievance and at the request of Central Classification Services.
With respect to Defendant Hobbs, the Court construes Sullivan to
argue that, because K. Whitehead responded to his informal
complaint that, "You were transferred to Keen Mountain on 1-31-
14 at the request of Eastern Region Administrator" (Compl. Ex.
6, at 1), and because Defendant Hobbs was the Eastern Region
Administrator, Defendant Hobbs was necessarily involved in the
deprivation of his due process rights.    As discussed below,
Sullivan fails to plausibly suggest that Defendant Hobbs

---

[16] For the first time in his Reply, Sullivan attaches an
affidavit from another inmate who swears that he heard Defendant
Younce say to Sullivan, "[s]ince you have so many complaints
about how you're being treated here, we're going to send you
somewhere more to your liking.    Then he chuckled and left."
(Reply Ex. 1, ECF No. 45-1.)    That belated filing is not
properly considered.
    But, even assuming that Sullivan had alleged that
Defendants Younce or Pearson were personally involved in the
deprivation of his rights with regard to his transfer, for the
reasons stated in conjunction with Sullivan's allegations
against Defendant Hobbs, this claim is both frivolous and fails
to state a claim upon which relief may be granted.

retaliated against him in violation of his constitutional rights.

Claims of retaliation by inmates are generally treated with skepticism because "'[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)) (some internal quotation marks omitted).[17] "[P]laintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ." Adams, 40 F.3d at 74. Instead, a plaintiff must allege facts that plausibly show "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Id. at 75. Contrary to Sullivan's contention, "there is no constitutional right to participate in grievance proceedings." Id. (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). Because Sullivan enjoys no constitutional right to participate in grievance proceedings, his act of pursuing a grievance about GCC staff was

---

[17] This case provides a prime example as to why claims of retaliation are met with skepticism. Here, at the point when Sullivan was actually transferred on January 31, 2014, he had filed one grievance the day before his transfer. The Court has serious doubts that the VDOC could effectuate a transfer of an inmate in one-day period.

not the exercise of a constitutional right.  Id. (citing Flick, 932 F.2d at 729).

Sullivan also fails to allege that the purported retaliatory act—transferring him to a higher security prison—violated his constitutional rights.  Cochran, 73 F.3d at 1317. Sullivan fails to allege facts that plausibly show that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such right."  Adams, 40 F.3d at 75.  Claim Four will be dismissed as frivolous.

In Claim Five, Sullivan argues that Defendants Younce, Pearson, and Hobbs violated his due process rights by taking his property from his cell.  Sullivan fails to allege facts that plausibly suggest that Defendants Younce, Pearson, or Hobbs had any personal involvement in Defendant Medilia's and Harrison's confiscation of his books and other materials from his cell.

To the extent that Claim Five remains against any Defendant, the Due Process Clause applies only when government action deprives an individual of a legitimate liberty or property interest.  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972).  The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest.  Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases).  Sullivan does not indicate

35

that Defendants' actions resulted in the deprivation of any liberty interest.[18]   Instead, generously construing Sullivan's Complaint, he contends that Defendants Younce, Pearson, and Hobbs deprived him of his black history books and purported religious reading materials without due process of law.

First, the Due Process Clause is not implicated by a negligent act of state official causing unintended loss of property.   Daniels v. Williams, 474 U.S. 327, 328 (1986). Negligent and intentional deprivations of property "do not violate [the Due Process] Clause provided . . . that adequate state post-deprivation remedies are available."   Hudson v. Palmer, 468 U.S. 517, 533 (1984) (finding due process satisfied by post-deprivation remedy to redress intentional destruction of personal property by prison guard during a shakedown). Moreover, Virginia's provision of adequate post-deprivation remedies forecloses Sullivan's due process claim for the deprivation of property. See id.; Wilson v. Molby, No. 1:12cv42 (JCC/JFA), 2012 WL 1895793, at *6-7 (E.D. Va. May 23, 2012);

---

[18] At most, he vaguely states that "Defendants deprived him of his 'liberty' interest in the fundamental right to (Petition of Grievances, Equal Protection of the Law, and Administrative transfer)." (Compl. ¶ 74.) As discussed above, Sullivan has no constitutional right to participate in the grievance procedure. With regard to "Equal Protection of the Law, and Adminstrative transfer," Plaintiff rambles on about his "legitimate claims of entitlement" to these two things, but fails to identify any of the three Defendants he named with regard to his claim in this section or how they were personally involved with the deprivation of his rights. (See Compl. ¶¶ 71-82.)

Henderson v. Virginia, No. 7:07-cv-00266, 2008 WL 204480, at *10
n.7 (W.D. Va. Jan. 23, 2008).

Virginia has provided adequate post-deprivation remedies
for deprivations caused by state employees. Under the Virginia
Tort Claims Act, Virginia has waived sovereign immunity for
damages for "negligent or wrongful" acts of state employees
acting within the scope of employment. Va. Code Ann. § 8.01-
195.3 (West 2015).[19]   The United States Court of Appeals for the
Fourth Circuit has held that the Virginia Tort Claims Act and
Virginia tort law provide adequate post-deprivation remedies for
torts committed by state employees. See Wadhams v. Procunier,
772 F.2d 75, 77-78 (4th Cir. 1985). Because the availability of
a tort action in state court fully satisfies the requirement of
a meaningful post-deprivation process, Sullivan cannot state a
claim for the loss of his property under the Fourteenth
Amendment. See Wilson, 2012 WL 1895793, at *6-7; Henderson,
2008 WL 204480, at *10 n.7. Accordingly, Claim Five will be
dismissed as frivolous and for failure to state a claim.

Accordingly, the First Motion to Dismiss (ECF No. 35) and
Second Motion to Dismiss (ECF No. 47) will be granted.
Sullivan's claims will be dismissed. The action will be

---

[19]   "[T]he Commonwealth shall be liable for claims for
money. . . on account of damage to or loss of property or
personal injury or death caused by the negligent or wrongful act
or omission of any employee while acting within the scope of his
employment . . . ." Va. Code Ann. § 8.01-195.3 (West 2015).

dismissed.  The Clerk will be directed to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

The Clerk is directed to send a copy of the Memorandum Order to Sullivan and counsel of record.

It is so ORDERED.

                                    /s/   REP

                         Robert E. Payne
                         Senior United States District Judge

Richmond, Virginia
Date: February 16, 2017

38